IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GREGORY HILL | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § Case No. 4:13cv74 |
| | § |
| BERT BELL/PETE ROZELLE | § |
| NFL PLAYER RETIREMENT PLAN | § |
| | § |
| Defendant. | § |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are cross-motions for judgment in a dispute concerning disability benefits sought by Gregory Hill, a retired National Football League player, from the Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Plan"), an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001 *et seq*. Through the Plan, Hill receives Total and Permanent ("T&P") disability benefits at the "Inactive" level. However, he claims that he should be classified in the "Football Degenerative" category, which would provide him with greater monthly benefits. Therefore, Hill seeks judicial review of the Plan's decision to award benefits to him at the lower level. *See* Dkt. 1. The Plan's T&P disability benefits are governed by Article 5 of the Plan.

Hill was a running back and played professional football for six seasons in the National Football League. As such, he was covered for pension and disability benefits through the 2009 Bert Bell/Pete Rozelle Player Retirement Plan. Hill met the definition of a Vested Inactive Player under

1

the Plan. *See* 1.36 and 1.37 of Article One of the Plan at GH 332.[1]

In 2010, Hill was awarded Social Security Disability benefits retroactive to November 2008. *See* GH 205. This award by the Commissioner (SSA) was based on state agency doctors who reviewed the medical evidence submitted. In his Social Security Application, Hill stated he was disabled due to memory problems, blackouts, balance, headaches, joint problems, fatigue, sleep and vision problems. *See* GH 206.

After the award by the SSA, Hill applied for disability benefits under the Plan. A Vested Inactive Player may obtain disability benefits under the Plan if he is totally and permanently (T&P) disabled as defined in Section 5.2 of the Plan. Under Section 5.2 of the Plan, a player is deemed to meet the T&P requirement if the Committee finds that he has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit. However, if a player is receiving Social Security Disability benefits he is deemed to meet the T&P disability requirement.[2]

Since Hill was deemed to be T&P disabled under the Plan, he could be eligible for two categories of disability: Football Degenerative or Vested Inactive. For Football Degenerative, the disabilities must arise out of League Football activities and result in a T&P disability. In the Vested

---

[1] The parties filed under seal an Agreed Administrative Record in this case. *See* Dkts. 12 – 14. It is referred to herein as "GH [#]," in accordance with the parties' Bates numbering.

[2] The Social Security Administration defines disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents a claimant from engaging in any substantial gainful activity. *See McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Substantial gainful activity for Social Security purposes does not necessarily preclude earning any income. *See Masey v. Astrue.* 2012 WL6177097 (N.D. Tex. 2012).

Inactive category, the T&P disability arises from other than League Football activities. *See* GH 343.[3]

In his injury summary submitted with his application to the Plan, Hill stated he believed he qualified for benefits based on the following injuries: lumbar and cervical spine, bilateral knees ,hips, elbows, hands/wrists/fingers ,ankles and feet. *See* GH 203. At a meeting of the Disability Initial Claims Committee, Hill was granted Inactive T&P benefits, since, under the Plan, he qualified due to the award of Social Security Disability benefits. Consideration of whether he qualified for the more beneficial Football Degenerative benefits was tabled pending a medical evaluation. *See* GH 212. The Plan provides that any person seeking T&P under the Football Degenerative category and awarded Social Security Disability benefits may also be required to submit to an independent medical exam. *See* GH 345.

Hill was referred to Dr. Perry for an evaluation. Dr. Perry notes the same impairments that Hill claimed in his application. On the first page of the report, he checks that Hill's impairments as to his cervical spine, lumbar spine and bilateral as to ankles and hips resulted from injuries from football and indicates that such impairments were expected to persist. *See* GH 223. However, on the second page of the report, Dr. Perry notes that Hill is not totally disabled to the extent that he is substantially unable to engage in any occupation for remuneration or profit and restricts Hill to sedentary employment. *See* GH 224. In his discussion section, Dr. Perry questions the validity of

---

[3]Although the definition of arising out of League Football activities is not defined in Section 5 of the Plan, both parties appear to acknowledge that the definition in Section 6.4(c) dealing with line of duty disability applies. Section 6.4(c) provides that a disablement arising out of other employment, athletic activities for recreational purposes or disablement for an injury or illness that arises out of other than League Football activities does not arise out of League Football activities.

3

Hill's reaction to the exam and states that he is not totally and permanently disabled as a result of orthopedic injuries from playing professional football. *See* GH 226.

Hill contends that there was no need to get Dr. Perry's opinion as to T&P because the Plan document forecloses the question. Dr. Perry goes on to state that Hill could be permanently disabled but only for a neurologic or psychiatric component.

In January 2011, the Disability Initial Claims Committee met and denied Hill's request for Football Degenerative citing Sections 5.1(c) and 5.5(b) of the Plan. *See* GH 231.[4] Hill was notified by letter on January 7, 2011 that he was only qualified for Vested Inactive Benefits. *See* GH 232. The letter states that the Committee reviewed the report of Dr. Perry and other medical records in support of his application. The Committee noted that it did not find Hill's disabling condition to arise out of football activities.

Hill then went to see another orthopedist, Dr. Maier. It appears this was a self-referral. Dr. Maier opines that Hill's present permanent disability is from football related injuries. *See* GH 245. In March 2011, Hill consulted with a Dr. Shukla who did an EMG and reported the findings as abnormal. *See* GH 250.

On April 12, 2011, Hill appealed the Board's decision, noting quite succinctly that, since he was disabled under the terms of the Plan, the only issue for Dr. Perry was whether his injuries were

---

[4] Hill takes issue with the notation "reclassification" contained in the Board's minutes. He claims that this puts a different burden of proof on him. However, it is clear from the subsequent correspondence that he was not reclassified, but merely that there was a final determination of his classification.

the result of football league activities. *See* GH 256.[5] Hill's letter must have caused some concern for the Committee, because, on May 11, 2011, his appeal was tabled for additional information. *See* GH 262.

The Plan then contacted a Robert Gilbert M.D. for an opinion as to whether there was a neurological "disablement" that would prevent Hill from substantially being able to engage in any occupation for remuneration or profit. *See* GH 264. Dr. Gilbert, after a review of the records, stated that he suspected malingering and stated there was no total neurological disability related to football activities. *See* GH 265. On August 3, 2011, the Board denied Hill's appeal as to Football Degenerative for failure to meet the requirements of Section 5.1(c) of the Plan.

By letter dated August 15, 2011, the Board notified Hill of its decision. The Board informed Hill that it based its conclusion on three grounds. First, it relied on Dr. Gilbert's assessment. Second, it relied on Dr. Perry's assessment that Hill's orthopedic impairments did not rise to a total and permanent disability. Third, it found that Dr. Maier's report was consistent with Dr. Perry's report in that Hill's impairments were attributable to orthopedic injuries, but even Dr. Maier did not find him totally and permanently disabled. *See* GH 272. The Board goes on to state that Hill has a combination of impairments but that psychiatric predominate and do not meet the requirement of the Plan for Football Degenerative, but nonetheless would be excluded by Section 5.1(h) of the Plan which restricts such psychiatric awards for the most part to either Active Non-Football or Inactive.

---

[5] The Plan refers to disabilities not injuries. It is not clear from the record as to what impairments the SSA found to be disabling. Neither does it appear the Committee had an understanding of the impairments that led to the SSA disability award.

Once Hill was deemed to be T&P disabled because he was drawing SSA disability, whether he is substantially prevented from or unable to engage in work for profit or remuneration, as called for in the Plan documents, is immaterial. The Plan in effect has adopted an alternative way in which a player may be T&P disabled. Therefore, the only question for the Board is whether his SSA disability arises out of League Football activities. Dr. Perry opines that he can work but that issue is foreclosed by the Board's Plan. For purposes of the Plan, he is disabled.[6]

Thereafter, Hill furnished a statement from Dr. Maier which, in effect, tells the Board to read his report and that he disagrees with the way the Board read it. According to Dr. Maier, Hill is T&P disabled as football related. *See* GH 275. Thereafter, in November 2011, the Board tables the appeal for an orthopedic exam with Dr. David Apple. *See* GH 281. Dr. Apple examines Hill and, like Perry, checks the box for a number of impairments that are football injuries and permanent. *See* GH 289. As did Dr. Perry, Dr. Apple states that Hill is not totally and permanently disabled to the extent that he is substantially unable to engage in any occupation for remuneration or profit. He also states that Hill's pain is out of proportion to the objective findings and that he is the first player he has seen who has complained of so much pain that he cannot undress either his upper or lower extremities. *See* GH 290.

---

[6] Part of the problem in this case is that the Plan simply incorporates a lesser standard for T&P disability in regard to receipt of Social Security benefits than it otherwise require if Hill was not drawing Social Security. If Hill was not receiving Social Security benefits, the Board would have scored a touchdown on the opening play and none of the above discussion would have been necessary, at least in the Court's opinion.

In March 2012, the Board notifies Hill that his appeal for classification for Football Degenerative is denied. The Board cites Dr. Apple's report (as well as Dr. Perry's) that Hill was not T&P disabled based on his orthopedic impairments. As such, the Board concludes that there is no evidence that his T&P disability is related to League Football Activities. The Board also gives its reasons for crediting the reports of Gilbert, Apple and Perry. *See* GH 303.

As noted above, Article 5 of the Plan does not include a definition of "arises out of League football activities." *See* GH 343-350. However, Plan § 6.4(c), relating to the "Line–of–Duty Disability" benefit, contains the following definition:

> "Arising out of League football activities" means a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by an Employer, including all required or directed activities. "Arising out of League football activities" does not include, without limitation, any disablement resulting from other employment, or athletic activity for recreational purposes, nor does it include a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises out of other than League football activities.

GH 352.

In cases concerning T&P disability benefits, the definition taken from the "Line–of–Duty" section of the Plan has been applied by other courts. *See, e.g., Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan,* 504 F.3d 818, 821 n. 4 (9th Cir. 2007); *see also Johnson v. American United Life Ins. Co.,* 716 F.3d 813, 821 (4th Cir. 2013)("[A]mbiguous language in one portion of an ERISA plan may well be clarified by reference to unambiguous language in another portion of the plan.").

The Plan here is an employee, multi-employer welfare benefit Plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3)(2)(A), 1002(37)(A),

and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 *et seq.,* also known as the "Taft–Hartley Act." As required by statute, the Plan is jointly administered by employee (NFL players) and employer (NFL club owners) representatives. 29 U.S.C. § 186(c)(5)(B). Three player representatives are appointed by the NFL Players Association ("NFLPA") and three club ownership representatives are appointed by the NFL Management Committee ("NFLMC") (collectively the "Retirement Board" or the "Board"). The Retirement Board, which meets quarterly, is the "named fiduciary" of the Plan and is responsible for administering the Plan. The Plan grants the Board "full and absolute discretion, authority and power to interpret" the Plan and decide claims for benefits. GH 355.

Under the Plan, the Disability Committee or the Board had absolute discretion to determine whether Hill was entitled to benefits. *See* GH 359 at § 8.9. If the Plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the Plan's terms, the Court must review a decision to deny benefits only for abuse of discretion. *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,* 694 F.3d 557, 566 (5th Cir. 2012).

"In the ERISA context, "[a]buse of discretion review is synonymous with arbitrary and capricious review." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009). This standard requires only that substantial evidence supports the Plan fiduciary's decision. *Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 273 (5th Cir. 2004). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare,* 789 F.2d 1181, 1185 (5th Cir.1986)). "A decision is arbitrary only if made without a

rational connection between the known facts and the decision or between the found facts and the evidence." *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 246 (5th Cir. 2009) (citing *Meditrust Fin. Servs. Corp.,* 168 F.3d at 215). Moreover, this Court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 297 (5th Cir.1999) (en banc)). *See also Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,* 694 F.3d 557, 566 (5th Cir. 2012).

As noted, the Plan affords Hill two avenues of eligibility for T&P disability. Since Hill's Social Security disability award is valid, the next step in the analysis is whether this established disability arose out of football activities. This matter was not addressed by the Social Security Administration. As noted and discussed above, § 6.4(c) defines "[a]rising out of League football activities" as "a disablement arising out of any League pre-season, regular-season, or post-season game, or any combination thereof, or out of League football activity supervised by the Employer, including all required or directed activities." GH 352. That provision also contains three exclusions, under which a disability will *not* be found to arise out of League football activities. *Id.* The first two define "arising out of League football activities" to exclude "any disablement resulting from other employment" or from "athletic activity for recreational purposes..." *Id.* Those two exclusions are not pertinent here.

The third exception states that arising out of League football activities "does not include ... a disablement that would not qualify for benefits but for an injury (or injuries) or illness that arises

9

out of other than League football activities." *Id*. This exclusion is pertinent here given the record before the Court.

The Court is cognizant of the fact that many physicians who have examined Hill use terms such as malingering, over exaggeration and lack of credibility, and comment on numerous essentially normal MRIs and X-rays. Other physicians have determined that his injuries are football- related and that he does have ongoing problems. In Dr. Apple's report, he stated as follows: "I do not know of any orthopedic problem which causes the generalized pain that the patient is experiencing. There is not any evidence of muscle atrophy and only minimal changes on x-ray and on no pain medications the reliability of the exam is questioned." GH 295. Although Apple acknowledges an impairment secondary to pain, he states that it does not appear to be related to any orthopedic problem. Assuming that there is a psychiatric disability under the facts of the case, Hill would still be in the Vested Inactive category.

Before the Board were numerous medical records of examinations, some conflicting with one another. Also before the Board were numerous radiographic studies which were essentially normal. The Board primarily relied on the opinions of three doctors who either examined Hill and/or also reviewed many, if not all, the records before the Board.

The Court finds that the Board did not abuse its discretion in denying Hill Football Degenerative benefits. Perry's and Apple's opinions went beyond the check the box notations contained in the forms. Acknowledging that Hill had injuries related to football is not in and of itself a finding of disability. The narratives attached to their reports indicate the reasoning that he was not T&P disabled due to League football activities. The decision of the Board is supported by

10

substantial evidence.

As to Hill's remaining issues, the Court finds that the Disability Initial Claims Committee did not treat Hill's claim as a reclassification claim. It is clear from reading the Board minutes as well as correspondence to Hill that the claim was never a reclassification claim as contemplated by Section 5.5(b) of the Plan. The section contemplates some changed circumstances to qualify for a reclassification and then only by evidence which is clear and convincing. Hill does not argue that there were any changed circumstances and further never sought reclassification. The Board, all along, tabled either its initial decision or its final decision pending receipt of additional evidence.

Of note is the fact that both the Retirement Board and the DICC had the discretion to initially classify or reclassify a player's category of disability. Hill points out several instances where the Board used the term "reclassification." For instance, the Board at its January 6, 2011 meeting specifically refers to the fact that Hill has failed to satisfy the requirements of Section 5.1(c) and for failure to meet the requirements of Section 5.5(b). Thus, the reading gleaned from this is that he cannot show Football Degenerative and he fails to satisfy the higher standard of reclassification. As noted, the letter to Hill which denies him Football Degenerative only bases the decision on Section 5.1(c).

At a later Board meeting in August 2011, the Board denies reclassification for failure to meet the requirements of Section 5.1. Although the Board's letter refers to Appeal for Reclassification, the basis of the letter again only refers to the Initial determination under 5.1(c). There is no mention of 5.5(b). *See* GH 269.

In reviewing the entire record, it is clear to the Court that the use of the term reclassification describes Hill's appeal of the initial determination not a request for a reclassification because of changed circumstances. Hill's attempt to parse out some error in the Board's actions fails for the fact that he couldn't even satisfy the "lower" burden of 5.1(c). Moreover, there are no changed circumstances he can demonstrate. His physical condition was the same as when he applied for benefits as when the last determination was made – no pain medication, essentially benign radiographic studies, no muscle atrophy, and extreme pain which limits his ability to even move, for which no orthopedic explanation can be given.

Contrary to Hill's assertion, the Board did not deny his appeal by asserting that his disability was primarily due to psychiatric impairments. The Board finds that he has a combination of different impairments for which psychiatric issues predominate. The Board need not choose a disability. He is already disabled. The only question is whether it is Football Degenerative, and the Board has answered that question in the negative. Further, the Court in reviewing the record determines that the burden of proof was never changed based on the reasoning noted above. The Board substantially complied with the Plan's terms, gave Hill more than a fair consideration of his case, and did not abuse its discretion.

## **RECOMMENDATION**

For these reasons, the Court recommends that Defendant's Motion for Judgment on the Administrative Record (Dkt. 17) be GRANTED, that Plaintiff's Motion for Summary Judgment (Dkt. 16) be DENIED, that Plaintiff take nothing by his claims appealing the denial of Football Degenerative benefits, and that this matter be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 26th day of August, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE